## MAINTENANCE OF ELECTRIC LIGHT POLES BY PRIVATE COMPANY IN FRONT OF RESIDENCE PROPERTY.

Court of Appeals for Lucas County.

ELLEN HUSS v. TOLEDO RAILWAYS & LIGHT CO.

Decided, June 7, 1915.

*Municipal Corporations—Erection and Maintenance of Electric Light Poles by Private Company—Can Not be Enjoined by Abutting Owner—Location of Poles Within the Discretion of the Municipal Authorities.*

1. A private company may erect and maintain in the streets of a municipality electric light poles and wires for lighting the public streets under a contract with the city; such construction does not invade the rights of an abutting owner, and such owner can not maintain injunction proceedings, even though a portion of the current carried is for private purposes, provided such additional use does not impair the abutter's property in any essential degree.

2. The location of poles and wires for lighting the public streets rests with the city authorities, and will not be interfered with by the courts in the absence of fraud or an abuse of discretion.

*Charles A. Thatcher,* for plaintiff.
*Tracy, Chapman & Welles,* contra.

RICHARDS, J.

This action was commenced by filing a petition in the court of common pleas on April 30, 1915, seeking to enjoin the defendant from erecting poles and stringing wires thereon in front of the property of the plaintiff on Williams street in the city of Toledo. To this petition the defendant filed an answer in which it avers that it has a contract with the city of Toledo, by the terms of which it is to furnish street lights for the streets, boulevards and parks in the city of Toledo, and is proceeding to erect a line on Williams street for that purpose, having received a permit therefor from the proper officials of the city. The defendant further avers that no wires are to be placed on the line of poles except such as carry current for the above purposes.

The evidence discloses that the plan of construction involves the placing of only one pole in front of the premises of the plaintiff, and the precise location of that pole has been heretofore fixed by order of this court. It appears further from the evidence that the plan involves the placing of eleven high tension wires to be used almost, if not entirely, for street lighting purposes. The poles are also to carry four wires composing a 3-phase, 60 cycle, A. C. Circuit, carrying 4600 volts. No serious question can be made as to the right of the defendant to construct the line in the place located, for the purpose of street lighting, including the eleven wires carrying current for arc lights; but it is strenuously insisted that the defendant has no right to erect or maintain the four other wires which are used not only for street lighting, but for other private purposes. The evidence discloses that these four wires compose one circuit and that such method is proper for good construction. It appears that the current from these four wires is used for lighting the streets, the drives, walks and buildings in Walbridge Park; the union depot and the grounds and streets adjoining the same; and also for general lighting of the fire departments on Broadway, and lighting and power at the water-

works station on Broadway, and general distribution of incandescent lighting in the vicinity of Broadway and extending to Glendale avenue. None of the wires named will carry current to be used solely for private incandescent lighting, nor solely to carry energy for private power plants. On the contrary, the four wires named serve a dual purpose, one of the chief purposes being the lighting of the public streets in that portion of the city. It does not appear from the evidence that the use of a portion of this current for private purposes has necessitated, or will necessitate, any larger poles or wires, or a greater number of wires or cross-arms.

We assume that the defendant has the right in this state, without any doubt, to erect and maintain a line of poles and wires for the purpose of lighting the public streets of the municipality, and the question here for determination is whether that right is in any wise curtailed by the fact that the same line of poles and wires carries current which is used in part for private purposes. The leading case in Ohio on this matter is *Callen* v. *Light Co.*, 66 Ohio St., 166. In that case it was announced by the court that it was a diversion of the street from the purposes to which it was dedicated, for a private lighting company to erect poles and string wires thereon of electric light cable lines for furnishing light and energy to private takers. It was further held in that case that this diversion of the street from the purposes for which it was dedicated was not relieved against by the fact that a fire alarm box used by the city was placed on the pole erected adjacent to plaintiff's property. It is true that the question to be determined in the case of *Callen* v. *Electric Light Co., supra,* was not precisely the same as that which we have for determination, because in that case the company had no contract for lighting any of the streets of the city in the neighborhood where the plaintiff's property was located, nor was it in fact furnishing or proposing to furnish any such service at that place, and hence it could not claim the right to erect or maintain the line of poles and wires at that place for street lighting purposes. In the consideration of that case the Supreme Court, speaking through Spear, J., discusses in detail

the question now under consideration in the instant case. It is said in the course of that opinion that the case it to be determined by a consideration of the question whether or not the acts of the defendant complained of constitute in an essential degree a taking of property within the meaning of the Constitution, and it is further stated by the court, in substance, that the defendant did not have the right to place permanent erections in the street in front of the plaintiff's property if by so doing, it in any appreciable degree impaired the owner's access to the lot, or otherwise interfered with the full enjoyment of the lot for all purposes to which it was adapted, or of the street itself. It must be borne in mind, in considering the discussion of that case and the conclusion reached by the court, that it had under consideration a case in which the electric lighting provided by the defendant was not of the streets, but that it was wholly for private use and, therefore, was not in any sense a street purpose, but was solely a private one. The fundamental principle was stated by the court that the city's control of the streets is confined to street purposes and is not for general municipal purposes. Nevertheless, the court used this language on page 180:

"Whatever is a necessary incident to that use, the city may provide. Sewers, for instance, drain the surface water and thus relieve the streets from impairment and destruction, and in this respect sewers are for a street purpose; while, in addition, they may drain abutting property, thus tending to promote the public health, and in this respect they serve a municipal purpose. The same may be said as to water supply for cleansing and sprinkling the streets, and by owners of property abutting for cleaning and domestic uses, and for the extinguishment of fires. Light, also, is necessary for street purposes, and is convenient for the use of citizens, thus serving two uses, one a street purpose and the other a municipal purpose."

The fact that fire alarm apparatus was a strictly municipal convenience was held not to justify the construction, for it was apparent that this apparatus might properly be constructed on a short post in an unobjectionable location. The language above

quoted is a clear declaration by the Supreme Court that poles and wires constructed for purposes of furnishing light for the public streets may serve as well a dual purpose, and if such dual purpose did not result in impairing the plaintiff's property in any essential degree, or to any appreciable extent, then injunction would not lie.

The doctrine is well announced in *1 Joyce, Elec. Law* (2d Ed.), Sections 233, 276 and 333. The author of that work in an illuminating discussion of the question, reaches the conclusion that if a line of poles and wires is erected for the purpose of lighting the public streets, it is not an additional burden that the same line also carries current used for private purposes.

We conclude from the evidence in this case that no appreciable or essential additional burden is cast upon the plaintiff's property by the fact that a portion of the current which is carried on some of these wires is used for various private purposes.

It is insisted by the plaintiff that the line of poles and wires should have been constructed on another street or on the opposite side of Williams street. No abuse of discretion is shown on the part of the city authorities in locating the line at the place where it has been located, with the pole in front of plaintiff's property placed where directed by this court, and we apprehend the true rule to be that in the absence of fraud or an abuse of discretion, a court will not interfere with the action of the municipal authorities on that matter. Of course, the right of the defendant to maintain this line could only extend for the time during which it supplies light for lighting the public streets of the city.

The injunction will be so modified as to allow the erection and maintenance of the pole on plaintiff's property at the place indicated, only, and in other respects will be dissolved.

CHITTENDEN, J., and KINKADE, J., concur.